James S. Thomson [CSBN 79658]
819 Delaware St.
Berkeley, CA  94710
Phone: 510.525.9123 / Fax: 510.525.9124
Attorney for Defendant LUIS HERRERA

Jennifer Schwartz [CSBN 135932]
Law Offices of Jennifer Schwartz
1299 Fourth Street, Suite 307
San Rafael, CA  94901
Phone: 415.460.2888 / Fax: 415.460.2730
Attorney for Defendant DANILO VELASQUEZ

Mark R. Vermeulen [CSBN 115381]
Law Office of Mark R. Vermeulen
755 Florida Street  #4
San Francisco, CA  94110.2044
Phone: 415.824.7533 / Fax: 415.824.4833
Attorney for Defendant GIOVANNI HERNANDEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LUIS HERRERA,<br>DANILO VELASQUEZ,  and<br>GIOVANNI HERNANDEZ,<br><br>　　　　Defendants. | No. CR-08-0730 WHA<br><br>**NOTICE OF MOTION AND MOTION FOR A MODIFIED RULING RE: THE COURT'S EARLIER ORDERS CONCERNING THE SCOPE OF THE GOVERNMENT'S OBLIGATIONS UNDER *BRADY v. MARYLAND***<br><br>Date:　March 8, 2010<br>Time:　1:00 p.m. |

TO JOSEPH P. RUSSONIELLO, UNITED STATES ATTORNEY, AND W.S. WILSON LEUNG, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on March 8, 2010 at 1:00 p.m. Defendants Luis Herrera, Danilo Velasquez, and Giovanni Hernandez, through counsel, will and hereby do move the Court for a modified ruling regarding the Court's earlier orders concerning the scope of the Government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and related authority.  Specifically, defendants seek modifications to the *Ruling on Defense Motions to Enforce Brady* (Dkt. No. 403 ("*Ruling on Defense*

1

*Motions*")) and the *Order Re Brady and Lead Investigative Agent Issue* (Dkt. No. 692 ("*Order re Brady*")).  Defendants seek modifications of these orders as set forth in the following motion.

This motion is made pursuant to Article III and the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution, and the authorities cited in the attached memorandum of law.

This motion is based on this notice of motion and motion, the attached memorandum of points and authorities, all previous pleadings submitted in connection with the prior litigation of the *Brady* issues, and all matters that may be presented at the hearing.

Dated:  February 8, 2010

James S. Thomson
Attorney for Defendant Luis Herrera

Jennifer Schwartz
Attorney for Defendant Danilo Velasquez

Mark R. Vermeulen
Attorney for Defendant Giovanni Hernandez

_/S/_____

By:  Mark R. Vermeulen

# INTRODUCTION

As noted in the Court's *Revised Order Setting Final Schedule for All Defendants* (Dkt. No. 998; ("*Revised Order*")), the *Third Superseding Indictment* added three new defendants: Luis Herrera, Danilo Velasquez, and Giovanni Hernandez (collectively, "the new defendants"). The *Revised Order* states, *inter alia*, that all prior rulings shall apply to these new defendants unless they file a motion for a different ruling, stating with particularity the evidence or reasons for a modified ruling. *Revised Order* at 2-3.

By this motion, the defense submits that the Court's order regarding the timing, scope, and nature of the Government's *Brady* obligations should be modified in the following ways:

1.     Deadlines imposed by this Court establishing dates by which the Government must make *Brady* disclosures should be set based upon the defendants' need to gather, investigate and make adequate use of such disclosures, as well as by their Sixth Amendment right to  an effective defense . The current dates set by the Court realistically preclude defendants from being afforded these rights and opportunities.

2.     The Court should issue an order directing the Government to seek, review, and produce from the San Francisco Police Department ("SFPD"), the SFPD Gang Task Force ("SFPD GTF" or "GTF"), the SFPD Homicide Detail ("SFPD Homicide"), the SFPD Bureau of Investigation ("SFPD BOI"), the Daly City Police Department ("DCPD"), the San Mateo County Sheriff's Office (including the San Mateo County Jails) ("SMCSO"), the San Mateo County Gang Task Force ("SMC GTF"), the BART police, the L.A. Coroner (who were involved in the autopsy in connection with the Daly City BART shooting), the San Francisco Sheriff's Office (County Jails), not only inculpatory information but also exculpatory information by finding that (1) a federal inquiry/*Brady* review limited to the SFPD's Gang Task Force  (where little or no exculpatory information is maintained) does not satisfy the Government's *Brady* obligations, and (2) specific, fundamental categories of exculpatory information have been unconstitutionally excluded by the Government because of its limited focus on the SFPD GTF.

3.     The proper framework for analysis of the scope of the Government's *Brady* obligations in federal/local investigations is provided in *United States v. Risha*, 445 F.3d 298 (3rd Cir. 2006), which analysis is in accord with that among most courts of appeal.  The test is whether cross-jurisdiction constructive knowledge can be imputed to the federal prosecution because of close involvement between the federal prosecution and state agents, or because impeachment information may have been readily available, and the questions to be examined include  (1) whether the party with knowledge of the information is acting on the government's "behalf" or is under its "control"; (2) the extent to which state and federal governments are part of a "team," are participating in a "joint investigation" or are sharing resources; and (3) whether the entity charged with constructive possession has "ready access" to the evidence.

4.     The Court entered an order effectively removing the SFPD from the *Brady* umbrella without benefit of the entire record regarding the nature, depth, and extent of cooperation between the Government and SFPD.

5.     The Court entered an order removing all other state, federal, and foreign entities from the *Brady* umbrella without benefit of any record regarding the nature, depth, and extent of cooperation between the Government and these agencies.

6.     The Court should issue an order directing the Government to seek, review, and produce all files and documents related in any way to the charges in the *Third Superseding Indictment* against Defendants Luis Herrera, Velasquez and Hernandez from the DCPD, the San Mateo County Sheriff's Office and BART police for *Brady* material.

## **FACTS RELEVANT TO THIS MOTION**

Defendants Luis Herrera, Velasquez and Hernandez were indicted in the *Third Superceding Indictment* on September 24, 2009.   Counsel for Defendant Luis Herrera (who is death-eligible) was appointed on October 27, 2009, counsel for Defendant Velasquez was appointed on November 10, 2009, and counsel for Defendant Hernandez was appointed on December 3, 2009.

Many of the allegations in the *Third Superseding Indictment*, including those that apply to the capital crime allegations against Defendant Luis Herrera, involve a homicide that took place at the Daly City BART station on February 19, 2009 ("the Daly City BART shooting").  One victim of this shooting was killed and three were wounded.  The Daly City Bart shooting investigation was undertaken by the DCPD, the SMCSO, the BART police, the SMC GTF, and other agencies.  All three new defendants are also named in Government's prefatory enterprise description, and in at least Counts One and Two of the *Third Superseding Indictment*, of being intimately involved with the MS-13 20th Street clique.

By March 5, 2009, nobody had been arrested for the Daly City BART shooting.  On that date, Defendant Luis Herrera was arrested along with several other suspected MS-13 gang members.  Calls by these individuals from San Francisco County Jail were recorded and SFPD and/or SFPD GTF worked with DCPD in an attempt to identify Defendant Luis Herrera and others as possible suspects in the shooting.  Defendant Velasquez was arrested in June of 2009, although the discovery thus provided by the Government does not reveal what evidence the Government has linking Defendant Velasquez to the Daly City BART shooting.  Defense counsel can only assume that the Government has information from an informant or witness – which it has not turned over – linking Defendant Velasquez to the shooting. The Government has, however, provided an "Alpha file" for Defendant Velasquez, presumably maintained by the SFPD GTF based on the belief that Defendant Velasquez was a MS-13 gang member. Prior to his arrest, Defendant Velasquez lived and worked in San Francisco and allegations in the *Third Superseding Indictment* accuse him of being involved in MS-13 gang activity.

4

**AUTHORITY / ANALYSIS**

I.    **The Court's Selection Of A *Brady* Disclosure Date Unconstitutionally Insulates The Government From Timely Disclosure And In A Case Of This Magnitude And Complexity, Effectively Deprives Defendants Of Their Constitutional Right To Effective Assistance Of Counsel.**

*Brady* requires disclosure at a time which guarantees effective assistance of counsel to all defendants in a multi-defendant case, including adequate review, investigation, litigation, and preparation.  *United States v. Agurs*, 427 U.S. 97, 107 (1976); *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985).  In the present case, the Court has established a *Brady* disclosure schedule that permits *Brady* disclosure to be delayed as to all defendants, including Defendants Luis Herrera, Velasquez, and Hernandez until shortly before trial.[1]  The new defendants object and request an opportunity to demonstrate that withholding *Brady* undermines the rights to due process, effective assistance of counsel, compulsory process, and confrontation.  In order to have such an opportunity, the defense hereby moves for an order requiring the Government to disclose the categories of *Brady* information in its possession, the volume of such information (which is related to effective use of *Brady*), and the bases (if any) for delay in disclosure.

This request encompasses *Brady* material related to the mitigation issues in this case which for Defendant Luis Herrera and other potentially-capital accused are governed by a fast-approaching mitigation presentation deadline.  If the Government possesses information or evidence which would tend to warrant a sentence less than death (i.e. anything the United States Attorney General or the jury *could* consider as mitigating), or would call into question any evidence that might be offered in aggravation, it should be required to disclose such evidence immediately given the enormous economic, logistical and psychic costs of the potential for capital punishment in this case.  This request reflects the defense right to present mitigation evidence *whether related to the crime or not* and encompasses information that would tend to exculpate a defendant either in full or by mitigating his culpability directly or indirectly (including information tending to establish any fact supporting a statutory mitigating factor or tending to negate a statutory aggravating factor).  For example, information or evidence suggesting that Defendant Luis Herrera acted under threat or duress, or even the influence of another, especially by co-defendants or by a Government agent, should be disclosed immediately.

---

[1] The new defendants will, by virtue of having been indicted so late in the case, have significantly less time to prepare than the twenty-six other RICO defendants, and the current *Brady* disclosure deadlines therefore create virtually insurmountable problems related to investigation and trial preparation.

**II.     The Record Establishes That The Government's *Brady* Review Was Truncated Because ICE Agents, On Behalf Of The AUSA,, Requested Only Information From The SFPD Gang Task Force (Rather Than All Applicable SFPD Divisions) And Failed To Obtain Or Review Other Information That Likely Constitutes *Brady* Material.**

The record makes clear that federal agents, acting on behalf of the prosecution in this case (and upon whose review the Government has based its responses to defense's *Brady* requests) limited their requests for material from the SFPD – either purposefully or inadvertently, expressly or implicitly – to *inculpatory* evidence. During a hearing before this Court on September 23, 2009 regarding SFPD compliance with subpoenas issued by Defendant Guillermo Herrera,[2] testimony from Mario Molina and Ernest Ferrando clearly established that SFPD GTF officers did *not* have access to informant files that were: (1) maintained by SFPD's Bureau of Investigations; (2) were not maintained in any form by SFPD GTF.  Similarly, the SFPD GTF did *not* have access to documents and information constituting evidence of third-party culpability for homicides which would have been maintained in the SFPD's Homicide Detail ("SFPD Homicide").  Neither of these categories of information could be characterized as remote, arcane, or unimportant.  Any federal agent – experienced or not – would know that these categories of information are of central import.

Counsel for defendants believe that other evidence exists that would bolster their claim that a sufficient *Brady* review has not been conducted, because it substantively *could not* have been conducted. The defense therefore requests an evidentiary hearing to establish the existence of informant files and information (and possibly of the fact that certain of such files may have been intentionally purged or destroyed) and of documents and information related to  third-party culpability for the homicides charged in the *Third Superseding Indictment*..  The defense contends that the Court's previous ruling on this issue unduly limits their right to *Brady* evidence as it might relate to the specific charges against them.  Moreover, the previous ruling suggests that the Government is not obligated to seek out exculpatory material from the agencies that investigated charges against them – including but not limited to DCPD, SMCSO, SMCSO GTF, BART police, and other agencies.

Defendants now seek a ruling with respect to what federal agents could have requested – and indeed should have requested -- from SFPD BOI and SFPD Homicide, including but not limited to informant files and third-party culpability evidence, without having to speculate where that information

---

[2] The Court did not review the transcript of the September 23, 2009 hearing in considering prior *Brady* motions by Defendant Guillermo Herrera and others, but the transcript of the hearing was lodged with the Court by previously in the case, and the Court is respectfully requested to review and consider the transcript and the related filings in ruling on the present motion.

would have been maintained (be it which drawers, with detail, or which division or bureau).  Further, the defense seeks an order establishing that the Government must review and disclose evidence from all files maintained by the agencies that investigated the Daly City BART shooting pursuant to their obligations under *Brady*.

This Court previously has recognized important language in *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979) which, in dicta, stated that a federal prosecutor could be charged with constructive knowledge of evidence in the files of the state agency on a "case-by-case" basis when there had been extensive interaction and cooperation between the two agencies.  Applying *Antone*, the Court reasoned that "[i]t would be a giant leap to hold that federal prosecutors are charged with knowledge of everything lurking in the desk drawers of local police who cooperate with federal law enforcement." The defense agrees.  Prosecutors need not have such specific knowledge of where the penciled, handwritten notes, and/or draft memos may be; they need only ensure that their agents request the appropriate categories of information, including informant files and evidence of third-party culpability. The local police – in this case, the SFPD GTF, SFPD Homicide, and the SFPD Bureau of Investigations – would have known where to look in relation to the SFPD documents and records, had their officers been asked.

This Court also previously ruled that:

> The evidentiary hearing record is uniform and consistent and this order so finds that the prosecutor and federal agents herein have been even-handed in their information requests to the SFPD. There is no basis, therefore, to suspect that a blind eye has been turned toward exculpatory evidence when making information requests.

*Order Re Brady* at 16:22-26.

Defendants respectfully disagree with this conclusion and contend that if this principle is applied to them, they will deprived of their right to *Brady* information not only from the SFPD but also from the agencies involved in the investigation of the Daly City BART shooting, all of which is critical to their defense..  With respect to the Court's conclusions regarding the Government's requests to SFPD, there is no evidence whatsoever that ICE agents requested a single informant file or any evidence of third-party culpability *from anyone*.  There is, moreover, ample evidence that Mr. Molina, Mr. McDonnell, and Mr. Ferrando would have informed the federal agents that SFPD GTF did not maintain this category of information and that each of these individuals would have been able to direct the federal agents to the appropriate detail or bureau.  Mr. Molina might even have informed ICE that he had a practice of maintaining memoranda in his desk drawers (rather than in the filing cabinets where Mr. McDonnell

searched).  At the August 4, 2009 hearing, GTF Officer McDonnell testified that he maintained a relationship with ICE which included being designated by his superior, Ed Yu, to be a liaison with ICE for this investigation in order to respond to ICE requests for information.  He also testified that he maintained an informal relationship with ICE which included regular face-to-face meetings and frequent telephone contact, including giving access to SFPD gang-related materials including Alpha files, "gang lists," and gang intelligence in written and oral form.  He also testified that he, and other GTF officers, would respond to federal requests for assistance, including making arrests and providing information about gang membership and sharing gang intelligence.  McDonnell further testified that federal agents and local law enforcement officers worked together (1) to secure formal approval for cooperation and information-sharing and (2) to provide access to SFPD materials, despite the immigration-related policies of the City of San Francisco.  This cooperation included SFPD's request to ICE that a federal grand jury subpoena be issued in order to expedite access to information.  McDonnell also testified that he directed ICE agents to secure information from the SFPD Homicide Detail and the SFPD General Works departments if SFPD GTF did not possess the necessary investigatory information, and that those units might possess such information.  He also testified that SFPD GTF did not have access to certain categories of exculpatory material related to this investigation (including informant files) and that SFPD GTF therefore did not provide this information to ICE and that ICE did not, to his knowledge, request this information.  He did not testify that he directed, or was asked to direct ICE, to the SFPD unit or units which maintained those files.

With respect to charges related to the Daly City BART shooting, the new defendants request either clarification from this Court directing the Government to undertake a full *Brady* review of all files and documents that could contain *Brady* information regarding the shooting, the defendants, informants or sources related to the shooting or to these defendants, and third-party culpability information.  The new defendants also request an evidentiary hearing to show that the federal agencies (including but not limited to ICE and the Drug Enforcement Administration ("DEA") worked hand-in-glove with the DCPD, the SMCSO, the SMCSO GTF and the agencies that investigated the Daly City BART shooting, such that the Government's *Brady* obligations are triggered as to documents and information maintained by these agencies.

/ / /

/ / /

/ / /

**III.     The Proper Analysis For Evaluating The Government's *Brady* Obligations When A Joint Federal/Local Investigation Is Undertaken Is Set Forth In *United States v. Risha*, And Is In Accord With The Analysis Undertaken Among The Circuits.**

In the *Order Re Brady*, the Court discussed the scope of the Government's obligations under *Brady v. Maryland*, *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995), and their progeny.  *See Order Re Brady* at 12-16.  The Court noted:

> [T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.  *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).  "Others acting on the government's behalf in the case" is the critical phrase at issue here.

*Order Re Brady* at 12:24-27.

Counsel agree that the proper inquiry is whether law enforcement agencies and/or agents were acting on the government's behalf.  The framework for conducting this inquiry in the context of federal/state investigations, which framework is prevalent among the circuits, is set forth in *United States v. Risha*, 445 F.3d 298 (3rd Cir. 2006).  In *Risha*, the court expressly framed the inter-jurisdictional issue:

> [W]hether cross-jurisdiction constructive knowledge can be imputed to the federal prosecution because of close involvement between the federal prosecution and state agents, or because impeachment information may have been readily available.

*Id.* at 299.  The *Risha* court discussed the analytical framework prevalent among the circuits:

> It appears that in addressing the issue of cross-jurisdiction constructive knowledge, most courts of appeals have looked to the same questions that we have.  Those questions include: (1) whether the party with knowledge of the information is acting on the government's "behalf" or is under its "control"; (2) the extent to which state and federal governments are part of a "team," are participating in a "joint investigation" or are sharing resources; and (3) whether the entity charged with constructive possession has "ready access" to the evidence.

*Id.* at 304;[3] *accord United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993) ("We construe the term 'constructive possession' to mean that although a prosecutor has no actual knowledge, he should

_____

[3] The *Risha* court cited to and addressed various other circuit cases which had discussed and applied this analysis and these factors.  *See Risha*, 445 F.3d at 304-306 (citing and discussing *Moreno-Morales v. United States*, 334 F.3d 140, 146 (1st Cir. 2003) (finding that "the Puerto Rico Senate was not acting on behalf of the federal government"); *Kasi v. Angelone*, 300 F.3d 487, 506 (4th Cir. 2002); *Moon v. Head*, 285 F.3d 1301, 1310 (11th Cir. 2002) (refusing to impute to a Georgia prosecutor evidence possessed by a Tennessee Bureau of Investigation agent because the agencies shared no

9

nevertheless have known that the material at issue was in existence.  Accordingly, we consider whether the prosecutor knew or should have known of the materials *even though they were developed in another case*." (Emphasis added.)); *see also, United States v. Arcasa*, 2008 U.S. Dist. LEXIS 20307 (W.D.Wash. 2008) (citing the *Risha* factors; finding them inapplicable in that case because "there [was] no allegation, or evidence, that the police officers were under the federal government's control or acting on its behalf.  Nor [was] there … any suggestion that the local police officers where part of a team or engaged in a joint effort with federal agents.").

Under the analytical framework of *Risha* and the circuit cases cited therein, a proper inquiry includes an examination of whether evidence was "indicative that federal and state forces may have acted as a team," whether the federal/state relationship was "collaborative," "whether the forces are part of a team or are engaged in a joint effort," whether "it appears that there may have been a 'close working relationship' between state agents and the federal prosecution," and whether evidence "is under the control of a state instrumentality closely aligned with the prosecution."  *Id.* at 302, 304-306 (citations omitted).

Counsel is aware that in the Court's earlier analysis it placed reliance on *United States v. Price*, 566 F.3d 900 (9th Cir. 2009), focusing primarily on whether a local police officer or agent qualified as the "lead investigative agent" (*Order Re Brady* at 13:1-14:4),[4]  and ultimately holding:

> In order to be "acting on the government's behalf in the case," this order holds that the state or local officer must have been "federalized" by subjecting himself or herself to federal direction, such as by voluntarily becoming the federal prosecutor's lead investigative agent at trial or at an evidentiary hearing.  Once that occurs, the federal prosecutor has the

resources or labor); *United States v. Leos-Hermosillo*, No. 98-50546, 2000 U.S. App. LEXIS 5012 at *8 (9th Cir. 2000) [Note: though cited in *Risha*, this is an unpublished Ninth Circuit case and is not binding on the Court]  (holding that even though an officer "was not employed by . . . the federal government, he was no less an agent of the federal government; he was acting on its behalf and subject to its control"); *United States v. Beers*, 189 F.3d 1297, 1303-04 (10th Cir. 1999); *United States v. Brooks*, 296 U.S. App. D.C. 219, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (holding that the prosecution must search files of other branches of government if they are "closely aligned with the prosecution" or have a "close working relationship"); *United States v. Perdomo*, 929 F.2d 967 (3d Cir. 1991); *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980); and *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979)).

[4] The Government had framed the issue in this manner, as noted by the Court at the outset of the order.  *See Order Re Brady And Lead Investigative Agent Issue* at 1:18-20 ("In this RICO gang prosecution arising out of a cooperative federal-state-local investigation, the prosecutor has fronted the question of whether the San Francisco Police Department should be deemed a 'lead investigative agent' for *Brady* purposes.").

authority to direct the agent and can instruct the agent to search for records back at the local station. Unless state or local officers have so federalized themselves, however, the United States Attorney has no such authority to carry out that responsibility, *i.e.*, to direct a search at the local police station. Put differently, before deeming the *federal* prosecutor to have constructive knowledge of all evidence at a *local* police station, we must be sure the prosecutor has the authority to direct a search there (or the authority to search it himself).

*Order Re Brady* at 14:6-15 (emphasis in original).

With all due respect, this analysis overlooks the clearly articulated factors set forth in *Risha* and related authority in the various circuits. *Brady, Giglio, Kyles, Price* and related authority do not require that local law enforcement personnel be the "lead investigative agent" in order for a *Brady* obligation to arise. While it is true, as the Court notes, that in *Price* the local law enforcement officer occupied a particularly close relationship with the prosecutor (*Order Re Brady* at 13:20-14:3), *Price* does not establish that being a "lead investigative agent" is the *sine qua non* for determining whether *Brady* applies, and the discussion in *Price* itself is to the contrary. *See, e.g., Price*, 566 F.3d at 908 ("As the prevailing Supreme Court precedents make clear, the district court should have considered whether the government failed to disclose the relevant information in the possession of *any* of its agents involved in Price's prosecution, not just what the prosecutor himself personally knew." (Italics in original; underlining supplied.); *id.* at 909 ("'[E]xculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine *Brady* by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it . . . .' [*United States v.*] *Blanco*, 392 F.3d [382,] 388 [(9th Cir. 2004)] (quoting *United States v. Zuno-Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995))." (Underlining supplied.)

The discussion and the factors set forth in *Risha* provide the proper framework for analysis of the issue. Thus, whether or not a police agent has been designated "lead investigative agent" is but one factor in determining whether teamwork, cooperation, collaboration, and joint effort existed between the federal and state agencies such that the state agency was acting on behalf of the federal government and, concomitantly, whether the Government's *Brady* obligations extend to those state agencies.

In this case, investigation of alleged MS-13 activity in the Bay Area was conducted by local law enforcement agencies. Federal agencies relied on the local investigations and were able to "jump start" their investigation using the local law enforcement work. Over the course of several years, the federal agencies draw continuously upon the information being gathered by the SFPD generally and SFPD GTF

11

in particular. Few local prosecutions were initiated (and no local homicide prosecutions were initiated) or if they were, they were halted. The gang intelligence information used to pursue the investigation of MS-13 was obtained in great part from local and state entities. Further, the intelligence gathering in El Salvador was and is conducted by local authorities there, then being provided to the Government and its agencies involved in the present prosecution.

## IV.    The Court's Order Effectively Removed The SFPD From The *Brady* Umbrella Based Upon An Incomplete And Imbalanced Record.

The Court entered an order effectively removing the SFPD (and other agencies) from the *Brady* umbrella without benefit of the entire record regarding the nature, depth, and extent of cooperation between the Government and the SFPD. Specifically, the Court declined to consider evidence produced in Defendant Guillermo Herrera's subpoena compliance hearings with the SFPD and submitted by the SFPD in response to subpoenas. This evidence, it appears, would have supported a conclusion that the relationship between the SFPD and the federal agencies was such that *Brady* obligations inured. The Court declined to consider or investigate the extent to which the SFPD maintained records *outside of* GTF, or whether SFPD officers destroyed or lost materials relating to Government informants that might be used to impeach those informants. In addition, the Court was unable to consider information recently disclosed to Defendants Sosa and Urias, but not to other defendants, that the SFPD cooperated with federal agents when the SFPD directed an informant to "plant" a weapon on an MS-13 member with the intent that this member would then also become an informant (which subsequently happened).[5]

The defendants who previously litigated this issue failed to subpoena or seek discovery of communications between the SFPD and the other government agents and agencies concerning the investigation, including but not limited to memoranda, call logs, and emails. Such an effort to gather information would have established the nature and extent of cooperation as well as the actual level of reliance by federal law enforcement on the SFPD GTF specifically, and on the SFPD generally. Defendants Luis Herrera, Velasquez and Hernandez now seek the right to attempt to collect this important information and present it to the Court.

The Government's failure to comply with its obligation to disclose materials related to the relationship between its agents and other state (and foreign) agencies further exacerbated the problem of an incomplete record.   No memoranda were disclosed by ICE, the U.S. Attorney's Office, or the FBI regarding the relationship with the SFPD or any other entities (except ICE reports regarding particular

---

[5] The defense is aware of these facts generally through the public pleading by Defendant Sosa on January 25, 2010 (*Supplement of Record* (Dkt. No. 1167)).

operations).  The Government did not disclose documents regarding the extent to which the SFPD participated in surveillance of suspects, monitoring of conversations, shared use of informants, relationships with the Government informants over time, the degree of access to state agency materials afforded the Government and its agents, or evidence regarding how information was conveyed to federal agents by state agents.  Finally, the Government did not disclose that they have represented that the monies they obtain for their investigation were to be used in joint investigations with local authorities and that the model proposed and followed, as well as the policy implemented, was one of a joint investigation.

With respect to the actual presentation of witnesses, the 30-odd pre-*Third Superseding Indictment* defendants were permitted to call three witnesses to testify as to the scope of interactions with other entities, and were forced to attempt to examine these witnesses without the benefit of documents that would have established the identities of critical agency witnesses on the issue of cross-jurisdiction or whether such knowledge was and is within a particular group of individuals, or more widely know.   Although the Government could have called three witnesses of its own, it declined to call any.  A review of the relevant transcripts reveals that the defense had no information sufficient to undertake anything but an exploratory cross-examination of limited witnesses which it selected based upon severely limited discovery.

Defendants Luis Herrera, Velasquez and Hernandez should not be deprived of their *Brady* rights because the record prior to their indictment was not sufficiently developed.  It matters not whether the incomplete record resulted from incomplete disclosures by the Government, other defendants' failure to subpoena all relevant documents (most importantly, records reflecting contacts between ICE and the SFPD), the Court-imposed limitations on inquiry, or a combination of all these reasons.  Whatever the cause, the new defendants should be afforded their own opportunity to discover and subpoena all relevant documents in order to flesh out a record that may result in a modified ruling by this Court.

Thus, the new defendants request that this Court direct the Government to provide a summary of the cross-jurisdictional contacts between the federal agents and state/local agents in this case. Specifically, defendants ask that the government disclose the information that ICE, FBI, DEA, ATF and other federal agents requested from any state or local agency (including but not limited to SFPD GTF, SFPD Homicide, SFPD BOI, DCPD, SMCSO, SMC GTF, and BART police) involved in the investigation of the charges in the *Third Superseding Indictment*, the scope of the informational requests, and a full listing of each local or state agent that worked with or provided information to any of the

federal agencies.  This information will allow defendants to subpoena witnesses for a fuller evidentiary hearing on the issue of cooperation and joint investigation.

**V.     The Court's Order Removed Numerous Law Enforcement Agencies From The *Brady* Umbrella Based Without Any Record.**

The Court entered an order removing all other state, federal, and foreign entities from the *Brady* umbrella without benefit of any record regarding the nature, depth, and extent of cooperation between the Government and these agencies.

This record was not sufficiently developed because the Court did not permit any hearings on this issue.  This record was also not sufficiently developed due to incomplete disclosures by the Government, the defense's failure to subpoena all relevant documents (most importantly, records reflecting contacts between the Government, the California Department of Justice, and El Salvadoran law enforcement agencies).  The defense requests an opportunity to discover and subpoena all relevant documents in order to establish a complete record.

/ / /

/ / /

/ / /

## <u>CONCLUSION</u>

This case is based upon an investigation lasting many years and involving many agencies and many individual agents.  Counsel and, therefore, the Court, had limited or no ability to establish the full extent of any relationship between various entities based upon two days of hearings and incomplete disclosures.  This Court should appreciate that the Government and its agents know the full extent of the relationship, and the Court should hold the Government to that relationship regardless of what the defense manages to establish in two days of limited hearings preceded by even more limited discovery.

In particular, the defense had no access to the informants who appear, from subsequent disclosures, to have been working jointly with the SFPD and the Government.  The defense also had no access to Government memoranda and emails concerning the relationship with the other entities; and limited access to discovery demonstrating the joint operations here.

Finally, the defense also objects to the notion that the effort to determine the Government's level of cooperation with other agencies is anything other than an exercise of the Court's supervisory powers to ensure a fair trial.  As such, even if those efforts ultimately prove unsuccessful, and any assisting entities are able to withhold information helpful to the defense (through misconduct or ineptitude), any imprimatur by the Court on the Government's efforts at this stage does not insulate them from the reversal of any conviction or sentence should later information be uncovered that remained in the hands of those entities.

Dated:  February 8, 2010                         Respectfully submitted,

                                                 James S. Thomson
                                                 Attorney for Defendant Luis Herrera

                                                 Jennifer Schwartz
                                                 Attorney for Defendant Danilo Velasquez

                                                 Mark R. Vermeulen
                                                 Attorney for Defendant Giovanni Hernandez

                                                   /S/_____
                                                 By:  Mark R. Vermeulen