IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT ERICK LOPEZ'S MOTION TO SUPPRESS EVIDENCE AND EYEWITNESS IDENTIFICATION** |
| ERICK LOPEZ, *et al*. | |
| Defendants. | |

## INTRODUCTION

Defendant Erick Lopez moves to suppress: (1) all evidence seized as a result of his warrantless stop, detention, and arrest by SFPD Officers Aaron Fischer and Luis Oliva on January 8, 2006; and (2) his identification by the victim of a shooting at 896 Valencia in San Francisco (Dkt. No. 2529). After full consideration of the parties' moving papers, declarations and submissions in support thereof, arguments at the hearing on the motion, and the testimony of Officer Fischer, Officer Oliva, Officer Bucy, and defendant Lopez at the evidentiary hearing, this order finds that there was no unlawful detention, arrest, or identification warranting suppression. The motion is accordingly **DENIED**.

Defendant Erick Lopez also filed a pretrial motion seeking to exclude evidence of the identification. This motion is also **DENIED**.

## STATEMENT

At approximately 1:50 a.m. on January 8, 2006, a number of SFPD officers responded to a reported shooting near the intersection of 20th Street and Valencia Street in San Francisco (Tr.

23, 59, 84–85). At the same time, a dispatch call broadcasted that the suspects had fled to Mission Playground located approximately one block away from the shooting (Tr. 20–24; Gov't Exh. A). Within approximately two minutes, SFPD Officers Aaron Fischer and Luis Oliva — in full uniform and in a marked patrol car — responded to the dispatch call regarding the fleeing suspects (Tr. 39, 60). The officers knew that the area was associated with a Sureño gang and that Mission Playground was a Sureño gang hangout (Tr. 21-23). At the evidentiary hearing, defendant Lopez admitted that the area was Sureño gang territory and "probably" a rough part of town (Tr. 105). The area was not well-lit (Tr. 68).

As Officer Fischer and Officer Oliva drove towards the entrance of Mission Playground, heading west on 19th Street, they observed defendant Lopez walking westward (Tr. 27, 40, 44, 68). Although Officer Fischer could not recall at the evidentiary hearing what defendant Lopez was wearing, his police report stated defendant Lopez was wearing a black shirt and blue jeans (Tr. 33). This matched the CAD description that the suspects were Latin adult males wearing black tops and jeans, but neither Officer Fischer or Officer Oliva could recall whether they had heard this description before stopping defendant Lopez. According to Officer Fischer, defendant Lopez made eye contact with the officers as they drove by, gave them a startled look, and quickly doubled back and walked in the opposite direction (Tr. 28). Defendant Lopez also testified that he made eye contact with the officers and turned around upon seeing the officers because he was nervous (Tr. 98, 105, 108). Thereafter, the officers observed defendant Lopez crouch/duck/lay down behind a parked car (Tr. 28–29, 47, 60, 68, 71, 100, 108). This behavior was described in the officers' incident reports. Although defendant Lopez's declaration stated he did not try to hide from the police and he did not hide behind a parked car, he admitted at the evidentiary hearing that he walked more slowly as he walked behind a van and the van blocked him from the police's view (Dkt. No. 2529-1; Tr. 100, 106, 108, 115). Clearly, he was trying to hide or so the police could reasonably have believed.

Defendant Lopez testified that the officers then approached him with their guns drawn and ordered him to lay on the ground, although the officers were unsure of whether they did so (Tr. 25, 34, 61, 72, 101). Officer Oliva testified that the officers did not run to defendant Lopez, but

2

1 instead, hurriedly walked towards him (Tr. 92). The officers then handcuffed defendant Lopez,
2 requested he sit up, and asked him questions (Tr. 72, 101–102). Because defendant Lopez
3 claimed he was a minor, the officers Mirandized him, as was SFPD policy (Tr. 48, 61, 73, 102).
4 Defendant Lopez also stated to the officers that he was walking *back from* Dolores Park — the
5 opposite direction that the police had observed him walking (Tr. 36, 37, 49, 110–112). Defendant
6 Lopez admitted at the evidentiary hearing that this statement that he was coming back from
7 Dolores Park was not true (Tr. 112).

8 Because of the circumstances surrounding the officers' encounter of defendant Lopez and
9 because the victim was incapacitated by a gunshot wound to the hand and to the abdomen, a
10 reverse cold show — where the suspect is taken to the victim to be viewed because the victim has
11 serious injuries and cannot be moved — was authorized (Tr. 37, 50, 61–62, 73, 86–87). Officer
12 Oliva led defendant Lopez to the ambulance where the victim was receiving treatment (Tr. 38, 50,
13 62, 64–65, 77–79, 90, 103).[1] This took a few minutes (Tr. 79). Before the SFPD's cold show
14 admonition could be read to the victim, the paramedic treating the victim told the victim to "look
15 over there" and the victim "glared" at defendant Lopez and said "[t]hat's the fucking homey there"
16 (Tr. 65, 90, 103, 114). Consistent with Officer Oliva's testimony that the identification was made
17 right after he arrived on the scene, defendant Lopez testified that the victim made the statement
18 "pretty much immediate[ly]" after defendant Lopez was taken to the scene (Tr. 65, 113).

### ANALYSIS

**1. DETENTION/ARREST**

21 An investigatory stop/detention is permissible when specific and objective facts create a
22 reasonable suspicion to believe that the detained individual had engaged in or was about to
23 engage in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 17 (1968). In assessing whether officers
24 had reasonable suspicion warranting a detention, the totality of the circumstances should be
25 considered, including reasonable inferences drawn by the officer because of his/her experience
26 and specialized training. *United States v. Arvizu*, 534 U.S. 266, 273–74 (2002).

---

[1] There is conflict in the record as to whether defendant Lopez was walked over to the scene or driven over to the scene. This does not matter to the ultimate resolution.

3

Here, there was clearly reasonable suspicion to believe that defendant Lopez may have engaged in criminal activity. Defendant Lopez was observed acting in a furtive manner within a block of a shooting that had occurred minutes earlier. Moreover, defendant Lopez was observed heading towards Mission Playground — where dispatch had reported the suspects were fleeing to. Although defendant Lopez testified that he turned around because police officers make him nervous (an arguably innocent explanation for his change of direction), the police are not expected to know defendant Lopez's internal thoughts. A series of seemingly innocent acts can together form the basis for reasonable suspicion. *Arvizu*, 534 U.S. at 277. A reasonable view of defendant Lopez's change of course, position behind the van (whether crouching or not), and startled look upon seeing the officers was that defendant Lopez was the shooter and was attempting to evade capture. Taken together, defendant Lopez's actions and the information available to the officers regarding the shooting and potential suspects created reasonable suspicion that defendant Lopez was the shooter or otherwise involved in the shooting. The stop and detention was constitutional.

The next question is whether the officers' actions *after* they stopped defendant Lopez transformed the investigatory stop/detention into an arrest. To determine whether a detention ripened into an arrest, the surrounding circumstances should be considered. *United States v. Torres-Sanchez*, 83 F.3d 1123, 1127 (9th Cir. 1996). The fact that a suspect was moved does not turn a detention into an arrest when it is a reasonable means of achieving the legitimate goals of the detention, given the particular circumstances. *United States v. Charley*, 396 F.3d 1074, 1079 (9th Cir. 2005). Similarly, depending on the circumstances, handcuffs may be employed in an investigatory stop. *United States v. Cervantes-Flores*, 421 F.3d 825, 829 (9th Cir. 2005). Although the record remains unclear as to whether Officers Fischer and Oliva ordered defendant Lopez into a "prone position" and pointed their guns at defendant Lopez, the police may use intrusive means in a *Terry* stop where the police have information that the suspect is currently armed or the stop closely follows a violent crime. *United States v. Miles*, 247 F.3d 1009, 1013

(9th Cir. 2001).[2] Specifically, our court of appeals has found that in certain circumstances the police may hold a suspect at gunpoint, require him to go on his knees or lie down on the ground, and/or handcuff him without transforming the stop into an arrest. *Ibid.*

Contrary to defendant Lopez's assertion, *Washington v. Lambert*, 98 F.3d 1181 (9th Cir. 1996), does not dictate a different result. As *Lambert* recognizes, whether a detention has ripened into an arrest is a fact-specific inquiry and intrusive means may be used during a *Terry* stop in certain circumstances. *Id.* at 1189. Moreover, the facts in *Lambert* were clearly distinguishable. There, two individuals were detained for crimes that occurred in a different city — the most recent crime occurring more than six days earlier. The physical characteristics of the detained individuals in *Lambert* actively conflicted with the description of the suspects. Here, defendant Lopez was detained immediately after a serious shooting. He was detained within a block of the shooting — in alleged gang territory — at a location that dispatch had indicated was where the suspects were fleeing. Although it may be that Officers Fischer and Oliva did not have an exact description of the suspect outside the fact that the suspect was a Latin male, unlike the description in *Lambert*, the description did not rule out defendant Lopez as the shooter. The police had information that the suspect was armed and defendant Lopez was stopped shortly after a violent crime. The instant facts are analogous to those in *Miles*, not *Lambert*. Given these circumstances, the police's actions to effect and maintain control over the stop was warranted and a *de facto* arrest did not inure.

### 2. EYEWITNESS IDENTIFICATION

An eyewitness identification is to be suppressed where the identification procedure was impermissibly suggestive *and* the resulting identification was unreliable. *See Neil v. Biggers*, 409 U.S. 188, 199 (1972). A court need not consider whether an identification was reliable, however, if the identification procedure was not impermissibly suggestive. *United States v. Drake*, 543 F.3d 1080, 1089 (9th Cir. 2008).

---

[2] The fact that the officers could not recall the exact details of how they conducted the detention is understandable given that they have responded to thousands of calls for service in their careers (Tr. 81). To expect the officers to recall the minutia of an incident that occurred over five years ago is unreasonable.

The evidentiary hearing established that although the police intended to conduct a reverse cold show, no such cold show ever occurred because the identification was spontaneously made before the police were able to conduct the cold show. Consistent with the officers' reports, defendant Lopez himself admitted that as soon as he was taken to the crime scene, the victim immediately identified him. Notably, it was a third party — the treating paramedic — that directed the victim's attention to defendant Lopez. The police did not trigger the identification. The spontaneity of the identification also explains why a cold-show admonition may not have been made to the victim — the police did not have an adequate opportunity to complete pre-identification procedures prior to the spontaneous identification.

Regardless, even if a reverse cold show did occur, our court of appeals has explained that a suggestive pretrial identification does not violate due process when use of the procedure is "imperative." *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998) (citing *Stovall v. Denno*, 388 U.S. 293, 301–02 (1967)). Here, there is no indication that the procedure followed was so *unnecessarily* suggestive and conducive to an irreparable mistaken identification such that defendant Lopez's due process rights were violated. The victim who identified defendant Lopez had been recently shot in the hand and abdomen. It was reasonable to believe that there might be no future opportunities for the victim to identify his assailant. The police simply did not have the time to compile a traditional line-up. Nor could the police move the victim.

For the above reasons, there is no need to determine whether the identification was reliable under *Biggers*. Instead, the reliability of the identification may be explored through cross-examination of the victim who identified defendant Lopez, if the victim testifies at trial. If, however, the victim will not testify at trial and the government seeks to introduce the statement under the excited utterance or past recollection recorded hearsay exceptions, it must lay a foundation for the applicability of the hearsay exception before the identification may be recounted to the jury (Tr. 96).

### 3. MOTION TO QUASH MOLINA SUBPOENA

As this order finds that there was no unduly suggestive identification procedure, a reliability determination need not be made. Accordingly, the government's motion to quash

defendant Lopez's subpoena issued to Sergeant Mario Molina is **GRANTED**.[3] Defendant Lopez argued that Sergeant Molina's testimony was relevant to the reliability of the identification (Tr. 15). As discussed above, however, reliability of the identification need not be analyzed to determine the outcome of the instant motion because the identification was spontaneous. Furthermore, Sergeant Molina's interactions with the shooting victim are not relevant to the instant motion — Sergeant Molina was not involved in the detention or identification at issue. Although Sergeant Molina's post-event interactions might be relevant to defendant Lopez's case generally, they are not relevant to the instant motion and do not warrant a pretrial examination of Sergeant Molina. Similarly, the GTF mug shot book is not relevant to the instant motion.[4]

Finally, the government asserts that the proper custodian of records is not Sergeant Molina, but the SFPD, as the mug shot book is an investigative document of the SFPD. It may be, however, that defendant Lopez can articulate a basis for why the mug shot book is needed for a different purpose outside of the scope of the instant motion. Defendant Lopez may of course apply for a subpoena for the mug shot book from the proper custodian of records if this is the case.

**4.      PRETRIAL MOTION TO PRECLUDE OF IDENTIFICATION (DKT. NO. 3141)**

Defendant Lopez also moves to preclude evidence of the identification on the grounds that two cooperating witnesses have named a different individual — not defendant Lopez — as the shooter (Dkt. No. 3141). This motion is **DENIED**. The fact that different witnesses identified different suspects is a factual issue to be raised for the jury's consideration. The motion does not articulate any basis or cite legal authority supporting its request to exclude the identification altogether at this stage.

---

[3] The government has standing to challenge the motion. The government may move to quash a subpoena issued to a third party if the subpoena infringes upon the its legitimate interests. *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 2982). Here, the subpoena was issued to obtain testimony and evidence for the instant motion. The government has an interest in preventing undue diversion from the immediate task of determining the outcome of the motion.

[4] Defendant Lopez also initially subpoenaed the "six-pack" shown to the victim in the days after the shooting. This six-pack, however, has already been produced.

7

**CONCLUSION**

For the foregoing reasons, defendant Lopez's motion to suppress evidence of the eyewitness identification is **DENIED**. The pretrial motion to preclude evidence of the identification is also **DENIED**. Defendant Lopez may, however, apply for a subpoena *duces tecum* to the SFPD to obtain a copy of the mug shot book, if he has a proper basis to do so.

**IT IS SO ORDERED.**

Dated: March 9, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE