IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT ERICK LOPEZ'S MOTION FOR MISTRIAL** |
| ERICK LOPEZ, *et al*. | |
| Defendants. | |

## INTRODUCTION

Defendant Erick Lopez moves for mistrial based on Witness Oliver Marota's testimony concerning whether Defendant Lopez had "gotten caught with a gun that had two murders on it" (Dkt. No. 4576). After full consideration of the trial testimony, the *voir dire* of Witness Marota, the submissions by the parties, oral argument, and remedies already taken, this order finds there is no occasion to declare a mistrial. The motion is accordingly **DENIED**.

## STATEMENT

On June 22, Witness Oliver Marota testified before the jury that he had a conversation with Defendant Erick Lopez as they were being transported back from court to their respective detention facilities (Tr. 11103).[1] This conversation was well before trial. Specifically, Witness Marota testified to the following:

---

[1] Witness Marota is a cooperating witness for the government. Unlike most of the government's cooperating witnesses, however, Witness Marota was not a member of the 20th Street Clique. Witness Marota was a member of the 11th Street Sureños, which purportedly was one of the 20th Street Clique's enemies at one point in time.

| | | |
|---|---|---|
| GOVERNMENT: | | What, if anything, did you ask him [defendant Lopez]? |
| MAROTA: | | I asked him if — if it was true that he had gotten caught with a gun that had two murders on it. |
| GOVERNMENT: | | And what, if anything did he say? |
| | | [*objection by counsel and court ruling*] |
| GOVERNMENT: | | What, if anything, did Spooky say to you? |
| MAROTA: | | He — he asked me, who told you that? And I — I told him Soldado told me. And then he said, yeah. |

The record was left ambiguous on whether "yeah" was an answer to the original question versus a commentary on the source of the rumor (Tr. 11103).

The next day, counsel for Defendant Lopez requested a hearing outside of the presence of the jury to determine if the statement was elicited in violation of *Massiah v. United States*, 377 U.S. 201 (1964). Counsel notified the Court that the statement to Witness Marota was made on July 30, 2009 — the same day as a proffer session between Witness Marota and the government (Tr. 11141). Counsel represented that prior discovery had not revealed the date of the statement and counsel only learned of the date after conferring with his client the day prior (Tr. 11140–41, 11144). Significantly, counsel stated that if the factual basis for a *Massiah* violation was established, then the way to address it would be an instruction to the jury striking the statement from the record (Tr. 11145–46). The Court ultimately allowed counsel to question the witness regarding the circumstances surrounding Defendant Lopez's statement and ultimately gave the instruction as requested.[2]

During defense counsel's examination, Witness Marota explained that he talked with Defendant Lopez in the transport van both before and after he met with the government for a proffer session (Tr. 11260–61, 11266). Witness Marota testified that he met with the government because he thought it might help him and when asked whether he believed at the time that providing the government with more information at the next proffer session would

---

[2] This *voir dire* was conducted in the presence of the jury, given the Court's concerns about managing a lengthy trial and the fact the statement at issue had already been laid before the jury so that no incremental harm would be done, if there was harm at all, in hearing counsel's further examination of the witness.

2

be beneficial to him, Witness Marota answered "yes" (Tr. 11263, 11269).  Witness Marota's testimony, however, did not indicate that the government ever instructed or suggested that he seek out more information.  Nor did his testimony indicate that the government even suggested that he would receive more favorable treatment if he acquired more information.  When asked whether he thought the questions he asked Defendant Lopez on the ride back from the proffer session would yield information he could provide to the government, Witness Marota answered "I did not take it like that" (Tr. 11270).

The government indicated that it would consider whether it would voluntarily strike the objected-to testimony (Tr. 11322–23).  The government thereafter filed notice that while it did not agree a *Massiah* violation occurred, it would nonetheless agree to strike the testimony to err on the side of caution (Dkt. No. 4555).  The Court accordingly advised the parties that it planned to instruct the jury that the testimony was stricken and must be disregarded.  Upon this advisement, counsel for Defendant Lopez did not move for a mistrial or object to an instruction as a resolution of the issue.  Instead, counsel simply raised a request that additional testimony outside of direct examination (such as cross-examination) be stricken as well (Tr. 11389).

That same day, the Court provided a strong curative instruction to the jury regarding the testimony as follows (after first describing the testimony):

> So it is my duty to instruct you to completely disregard that testimony. You may not consider it for any purpose. It should never have come into evidence. It would be wrong for you to give any weight or any consideration to that same point on cross-examination. This is a stronger message to you than merely, use it for a limited purpose. That line of questions and answers can be considered by you for no purpose. You must strike it from your memory. And I want you to try to make an effort to find that in your notepad and say, may not be considered for any purpose. Now, it is important that you follow this admonition (Tr. 11397).

Despite this instruction to the jury, Defendant Lopez later filed a motion for mistrial, asserting that the curative instruction was an inadequate remedy to cure any prejudice, specifically alleging the government's failure to notify him of the date of his statement justified a declaration of mistrial.

## ANALYSIS

Declaration of a mistrial is appropriate only when a cautionary instruction is unlikely to cure the prejudicial effect of an error. *United States v. Randall*, 162 F. 3d 557, 559 (9th Cir. 1998). The decision of whether to declare a mistrial is entrusted to the discretion of the trial court and is reviewed for abuse of discretion. *United States v. Banks*, 514 F.3d 959, 973 (9th Cir. 2008).

This order does not need to address whether a *Massiah* violation occurred because even assuming defendant Lopez's statement was elicited in violation of *Massiah*, the motion fails to articulate any prejudice warranting a declaration of a mistrial. The Court has already given the jury a strongly worded curative instruction to disregard the testimony. Jurors are presumed to follow the instructions given to them. *Brown v. Ornoski*, 503 F.3d 1006, 1018 (9th Cir. 2007). This was deemed adequate by counsel at the time.

It bears noting that defense counsel could have raised the issue before Witness Marota took the stand (Tr. 11144–45). Counsel had notice of the statement at least six months before Witness Marota's testimony and was reminded by the government of the statement approximately ten days prior to the testimony. Although it is unclear whether any government discovery identified the date of the statement, defense counsel could have learned of the date of the statement sooner in the same way that he eventually learned of it (Tr. 11144). It turned out that counsel had access to the information all along in that his client knew of the date prior to Witness Marota's testimony (Tr. 11141). The same counsel has filed *Massiah* motions in the past when relevant dates were uncertain or unknown and was permitted to delve into these issues outside of the presence of the jury — there is no convincing reason the issue here could not have been raised prior to Witness Marota's testimony.

In any event, there is no need to declare a mistrial because the substance of the now-stricken testimony has also been presented to the jury via other testimony. For example, witnesses Abraham Martinez and Walter Palma both testified that defendant Lopez had told them the gun that he was arrested with had two bodies or "chapetes" on it (Tr. 2381–82; 7493). A third witness, Carlos Garrido, also testified that Defendant Lopez told him the gun he was

4

arrested with was "hot" because it had been used to do a hit on "Atenes" or "Athenes" Street (Tr. 9587–90). The admitted firearms/toolmark evidence regarding the gun recovered from Defendant Lopez after a foot chase also bears this out (Tr. 6598–6611, 7029–44).

## CONCLUSION

For the reasons stated herein, the motion for a declaration of mistrial is **DENIED**. In an abundance of caution, however, at the close of all evidence, the jury will be reminded that it is not to consider Witness Marota's stricken testimony.

**IT IS SO ORDERED.**

Dated: July 14, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE